UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JOANNAH DICKINSON,

Plaintiff,

-against-

CITY UNIVERSITY OF NEW YORK,

Defendant.

------------------------------------------------------------X

16 Civ. 1036
(VSB) (KNF)
(ECF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendant
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8634

CLEMENT J. COLUCCI
Assistant Attorney General
Of Counsel

# TABLE OF CONTENTS

**Pages**

Table of Authorities ........ iii

FACTS ........ 2

A. The Unit's Functions and Hiring of Plaintiff ........ 3

B. Plaintiff's Early Work and the Hiring of Alexander Kisel ........ 4

C. Ms. Lepera Becomes Concerned About Plaintiff's Work ........ 4

D. A New Full-Time Position is Approved and Mr. Kisel is Appointed to Fill It on an Acting Basis ........ 5

E. Plaintiff Becomes Concerned That She Might Not be Reappointed and Complains About Discrimination ........ 7

F. Ms. Lepera Decides Not to Renew Plaintiff's Appointment After the Spring 2014 Semester ........ 8

G. An Independent Search Committee Reviews Applicants for the Full-Time Position, and Ms. Lepera Ultimately Selects Mr. Kisel ........ 9

H. Ms. Lepera Replaces Plaintiff with an Even Older Woman ........ 10

PROCEDURAL HISTORY ........ 11

ARGUMENT ........ 11

POINT I THE DECISION NOT TO REAPPOINT PLAINTIFF WAS NEITHER DISCRIMINATORY NOR RETALIATORY ........ 14

A. The Decision Not to Reappoint Plaintiff Was Not Based on Plaintiff's Age or Sex ........ 14

B. The Decision Not to Reappoint Plaintiff Was Not Retaliatory ........ 17

POINT II PLAINTIFF CANNOT SHOW THAT MS. LEPERA'S REASONS FOR APPOINTING MR. KISEL TO THE ACTING POSITION WERE A PRETEXT FOR DISCRIMINATION ........ 19

# TABLE OF CONTENTS

**Pages**

POINT III AN INDEPENDENT SEARCH COMMITTEE FREE OF DISCRIMINATORY OR RETALIATORY ANIMUS, NOT MS. LEPERA, DECIDED NOT TO RECOMMEND PLAINTIFF FOR THE FULL-TIME JOB ULTIMATELY GIVEN TO MR. KISEL ....................20

POINT IV PLAINTIFF HAS NOT SHOWN ANY SEVERE OR PERVASIVE CONDUCT SUFFICIENT TO SUPPORT A HOSTILE WORK ENVIRONMENT CLAIM ....................22

CONCLUSION ....................22

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Abrams v. Dep't of Pub. Safety*,
764 F.3d 244 (2d Cir. 2014)....................13

*Britt v. Merrill Lynch & Co.*,
08 Civ. 5356 (GBD), 2011 WL 4000992 (S.D.N.Y. Aug. 26, 2011)....................22

*Brown v. City of Syracuse*,
673 F.3d 141 (2d Cir. 2012)....................12

*Buhrmaster v. Overnite Transp. Co.*,
61 F.3d 461 (6th Cir. 1995) ....................15

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)....................19

*Carlton v. Mystic Transportation, Inc.*,
202 F.3d 129 (2d Cir. 2000), *cert. denied*, 530 U.S. 1261 (2000)....................15

*Clark County Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)....................18

*Colon v. Trump International Hotel & Tower*,
10 Civ. 4794 (JGK), 2011 WL 6092299 (S.D.N.Y. Dec. 7, 2011)....................14

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)....................14

*Dedyo v. Baker Engineering New York, Inc.*,
96 Civ. 7152 (LBS), 1998 WL 9376 (S.D.N.Y. Jan. 13, 1998)....................15, 16

*Dellaporte v. CUNY*,
998 F. Supp.2d 214 (S.D.N.Y. 2014)....................16

*Dixon v. International Fed. of Accountants*,
09 Civ. 2839 (HB), 2010 WL 1424007 (S.D.N.Y. April 9, 2010), *aff'd*,
416 F. Appx. 107 (2d Cir. 2011)....................18

*El Sayed v. Hilton Hotels Corp.*,
627 F.3d 931 (2d Cir. 2010) (per curiam)....................18

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Emanuel v. Oliver, Wyman Co.*,
85 F. Supp.2d 321 (S.D.N.Y. 2000)....................15

*Ferraro v. Kellwood Co.*,
440 F.3d 96 (2d Cir. 2006)....................13

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (2004)....................11, 12, 14

*Furfero v. St. John's Univ.*,
94 A.D.3d 695 (2d Dep't 2012)....................13

*Galimore v. CUNY Bronx Comm. College*,
641 F. Supp. 2d 269 (S.D.N.Y. 2009)....................16

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)....................12

*Grady v. Affiliated Central, Inc.*,
130 F.3d 553 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998)....................14

*Henry v. Wyeth Pharmaceuticals, Inc.*,
616 F.3d 134 (2d Cir. 2010), *cert. denied*, 562 U.S. 1279 (2011)....................21

*Holcomb v. Iona College*,
521 F.3d 130 (2d Cir. 2008)....................11

*Inguanzo v. Housing & Services, Inc.*,
12 Civ. 8212 (ER), 2014 WL 4678254 (S.D.N.Y. Sept. 19, 2014),
*aff'd*, 621 F. Appx. 91 (2d Cir. 2015)....................15, 16

*Jackson v. Post University, Inc.*,
836 F. Supp.2d 65 (D. Conn. 2011)....................15

*James v. N.Y. Racing Ass'n*,
233 F.3d 149 (2d Cir. 2000)....................11

*Kasiotakis v. Macy's Retail Holdings, Inc.*,
14 Civ. 462 (CM), 2015 WL 6125356 (S.D.N.Y. Oct. 16, 2015)....................22

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Lopez v. City of New York*,
No. 14-CV-3285 (NGG) (RLM), 2016 WL 3129184 (E.D.N.Y. June 6, 2016) ....................17

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................11, 12

*McPherson v. New York City Dept. of Educ.*,
457 F.3d 211 (2d Cir. 2006)....................13

*Moore v. Kingsbrook Jewish Med. Ctr.*,
11 Civ. 3626 (MKB), 2013 WL 3968748 (E.D.N.Y. July 30. 2013) ....................15

*Patterson v. County of Oneida*,
375 F.3d 206 (2d Cir. 2004)....................12

*Pearson v. Merrill Lynch*,
10 Civ. 5119 (RJS), 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012) ....................16

*Proud v. Stone*,
945 F.2d 796 (4th Cir. 1991) ....................15

*Ramos v. Marriott Int'l*,
134 F. Supp. 2d 328 (S.D.N.Y. 2001)....................15

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
702 F.3d 685 (2d Cir. 2012)....................13, 14

*Rogers v. Bank of N.Y. Mellon*,
09 Civ. 8551 (HBP), 2016 WL 4362204 (S.D.N.Y. Aug. 15, 2016)....................18

*Scaria v. Rubin*,
117 F.3d 652 (2d Cir. 1997)....................19

*Silver v. N. Shore Univ. Hosp.*,
490 F. Supp. 2d 354 (S.D.N.Y. 2007)....................16

*St. Mary's Honor Center v. Hicks*,
509 U.S. 502 (1993)....................12, 13

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Straub v. Proctor Hosp.*,
562 U.S. 411 (2011)....21

*Summa v. Hofstra Univ.*,
708 F.3d 115 (2d Cir. 2013)....11, 12

*Swiss Reins. Am. Corp. v. Slattery*,
248 F.3d 87 (2d Cir. 2001)....18

*Texas Dept. of Comm. Affairs v. Burdine*,
450 U.S. 248 (1981)....12

*Tomassi v. Insignia Fin. Group, Inc.*,
478 F.3d 111 (2d Cir. 2007)....16

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*,
— U.S. —, 133 S. Ct. 2517 (2013)....12

*U.S. Postal Service Bd. of Governors v. Aikens*,
460 U.S. 711 (1983)....13

*Vasquez v. Express Ambulance Serv.*,
835 F.3d 267 (2d Cir. 2016)....21

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000), *cert. denied* 540 U.S. 811 (2003)....11, 13

*Woodman v. WWOR-TV, Inc.*,
411 F.3d 69 (2d Cir. 2005)....21

## Statutes and Rules

*Federal Statutes*
29 U.S.C. § 623 *et seq.*, Age Discrimination in Employment Act ("ADEA")....1
42 U.S.C. § 2000e-2-3, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII")....1

**TABLE OF AUTHORITIES**

**Pages**

*State Statutes*

N.Y. Exec. Law § 296, *et seq.*, New York State Human Rights Law ("NYSHRL") ....................... 1

N.Y. Labor Law

§ 511(15) .......... 3

§ 590(10) .......... 3

§ 590(11) .......... 3

*Federal Rules of Civil Procedure*

Rule 56 .......... 1

Rule 56(a) .......... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOANNAH DICKINSON,

Plaintiff,

-against-

CITY UNIVERSITY OF NEW YORK,

Defendant.

16 Civ. 1036 (VSB) (KNF) (ECF)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant the City University of New York ("CUNY"), by its attorney, ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, submits this memorandum of law in support of its motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

In this employment discrimination action, alleging sex and age discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2-3, *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq*., plaintiff, a middle-aged woman formerly employed part-time on a semester-by-semester basis at CUNY's Unemployment/Workers' Compensation Unit (the "Unit"), contends that her supervisor, Ann Lepera, a woman older than plaintiff, caused her to suffer three different adverse employment actions because of her age, sex, or protected activity, or some combination thereof. First, she contends that she was denied promotion to an acting full-time position given to a younger male co-worker because of her age and sex. Second, she contends that she did not receive the permanent full-time position given to the same younger male co-worker because of

her age or sex, and perhaps — though this is not clear — in retaliation for her discrimination complaint concerning the acting full-time position. Third, she contends that she was denied reappointment after the Spring 2014 semester in retaliation for her discrimination complaint and perhaps — though this is not clear either — because of her age and sex. She also contends, in general terms, that she suffered a hostile work environment, though she identifies nothing beyond these specific adverse decisions that might count as such.

Whatever plaintiff's exact contentions, CUNY is entitled to summary judgment. As for the decisions Ms. Lepera did make, regarding who should hold the acting full-time appointment and whether to reappoint plaintiff after the Spring 2014 semester, Ms. Lepera was genuinely dissatisfied with plaintiff's work, and plaintiff has insufficient evidence to raise a triable issue of pretext. As for the decision not to appoint plaintiff to the permanent full-time position, that was not Ms. Lepera's decision. An independent search committee chose not to forward plaintiff as a finalist for the job, a process in which Ms. Lepera played no part. As for the hostile work environment claim, that is simply a different way of complaining about the discrete adverse employment decisions about which she sues on other grounds, offering nothing else to show the type of severe or pervasive abuse necessary to support such a claim. Therefore, CUNY is entitled to summary judgment on all claims.

**FACTS**

Plaintiff was employed as a part-time non-teaching adjunct in CUNY's Unemployment Insurance/Workers' Compensation Unit (the "Unit") on a series of one-semester appointments from June 2013 to June 30, 2014. (Deposition of Joannah Dickinson, 22:24-23:3, 89:8-9; Declaration of Ann Lepera, ¶ 1) Non-teaching adjuncts have no contractual expectation of reappointment, and continued reappointment does not result in any sort of tenure-like status, as it

can for full-time CUNY employees. (Lepera Decl., ¶ 6) Because of this, there is no requirement, and it is not generally the practice at CUNY, to create formal performance evaluations for non-teaching adjuncts. (Deposition of Sonia Pearson, 16:17-23)

**A. The Unit's Functions and Hiring of Plaintiff.**

Although it has other functions, the principal relevant function of the Unit is to review and, sometimes, contest applications for unemployment insurance benefits from persons formerly employed by CUNY. (Lepera Decl., ¶ 3) Unit staff investigate claims, and conduct unemployment insurance hearings before the New York State Department of Labor and file any ensuing appeals. (*Id.*) About half of the Unit's hearings involve three specialized parts of the N.Y. Labor Law, § 590(10), § 590(11), and § 511(15), which relate to situations common only in academic employment. (*Id.,* ¶¶ 11, 21-22)

Ann Lepera, now 57 years old, has been Director of the Unit since October 2003. (Lepera Decl., ¶¶ 2, 3) In addition to her administrative responsibilities, she also conducts hearings herself. (*Id.,* ¶ 3) In the spring of 2013, Ms. Lepera received permission to hire a new part-time non-teaching adjunct who would be able to conduct hearings. (*Id.,* ¶ 8; Declaration of Les Williams, ¶ 2) The hiring of such adjuncts does not require a formal search process and is done directly by the hiring manager. After soliciting resumes, Ms. Lepera invited 14 or 15 people for initial interviews, including plaintiff. (*Id.,* ¶ 9)

Plaintiff, then nearly 49 years old, had substantial experience conducting unemployment insurance hearings. (Dickinson Dep., 8:11-16:18; Lepera Decl., ¶ 11; Exhibit 1, plaintiff's resume) But she had not previously represented higher educational institutions or their employees and, therefore, had had no experience with §§ 590(10), (11), and 511(15). (Dickinson Dep., 11:6-11: 13:3-11; Lepera Decl., ¶ 11) Ms. Lepera discussed these issues with plaintiff, as

she routinely does with applicants. (Lepera Decl., ¶ 11) Ms. Lepera called plaintiff in for a second interview with her and her supervisor, Les Williams, then University Executive Director of Shared Services, and later offered her the job. (*Id.*, ¶¶ 5, 9-12; Dickinson Dep., 18:13-19:5; Declaration of Les Williams, ¶¶ 2, 3; Exhibit 2, June 7, 2013 e-mail chain re: second interview) Plaintiff began work in June 2013, her appointment continuing through the end of the Fall 2013 semester. (Dickinson Dep., 22:24-23:3; Lepera Decl, ¶ 12; Exhibit 3, Appointment Authorization Form; Exhibit 4, Personnel Action Form) Plaintiff would work two designated days per week at an hourly salary of $47.58 though scheduling could be flexible to accommodate her private practice, which she could continue part-time. (Dickinson Dep., 21:6-22:7)

**B. Plaintiff's Early Work and the Hiring of Alexander Kisel.**

Ms. Lepera did not attend plaintiff's early hearings and, in the normal course of events, Department of Labor decisions and hearing transcripts from plaintiff's cases would not arrive at the Unit's offices for some months after the hearings. (Lepera Decl., ¶ 13; Dickinson Dep., 32:11-36:16) Meanwhile, the volume of work in the Unit necessitated hiring another part-time non-teaching adjunct starting in the Fall 2013 semester. (Lepera Decl., ¶¶ 15-17) Ms. Lepera hired Alexander Kisel, a male in his twenties and, unlike Ms. Lepera or plaintiff, a lawyer. (*Id.*, Exhibit 5, Alexander Kisel resume) His appointment was also for two days a week, at an hourly salary of $44.12. (*Id.*) He began work in October, 2013. (*Id.*)

**C. Ms. Lepera Becomes Concerned About Plaintiff's Work.**

As decisions and transcripts from plaintiff's cases began to come into the Unit, and as Ms. Lepera and others had occasion to pick up plaintiff's files to cover hearings on days when plaintiff was not working, Ms. Lepera began to have concerns about her work. (Lepera Decl., ¶¶ 16-26) Ms. Lepera had three principal concerns. First, plaintiff was not consistently making

closing statements at hearings. (*Id.,* ¶¶ 16-20) Ms. Lepera informed her that it was the Unit's policy to make closing statements, but plaintiff persisted in resting on the record without making a closing statement. (*Id.*, ¶¶ 19-20; Dickinson Dep., 54:22-60:25; Exhibit 6, hearing transcripts and April 4, 2014 e-mail to plaintiff repeating instructions regarding closing statements).[1] Second, plaintiff seemed to have difficulty understanding the specialized Labor Law provisions that made up a large portion of the Unit's practice, to the point where an Unemployment Insurance Appeals Board decision noted the inadequacy of plaintiff's presentation of the issues in an unfavorable decision. (Lepera Decl., ¶¶ 20-23; Dickinson Dep., 66:4-67:16; Exhibit 7, Decision in *Pelicot* case) Third, plaintiff's sloppy file maintenance made it difficult for co-workers to pick up her cases for hearings scheduled when plaintiff was absent. (Lepera Decl., ¶¶ 24-26; Declaration of Maryam Malik, ¶ 7; Dickinson Dep., 64:19-65:22; Exhibit 8, Copies of Mr. Kisel's and plaintiff's appeal letters, file memos concerning plaintiff's failure to maintain files so co-workers could quickly review them)

Ms. Lepera discussed these concerns with Mr. Williams and Sonia Pearson, Human Resources Director for CUNY's central office, and expressed serious reservations about reappointing plaintiff for the Spring 2014 semester. (Lepera Decl., ¶¶ 34-40; Williams Decl., ¶¶ 9-12) Despite her reservations, however, she decided to reappoint her, giving her a last chance to improve her performance. (*Id.,* ¶ 36; Exhibit 9, Personnel Action Form)

### D. A New Full-Time Position is Approved and Mr. Kisel is Appointed to Fill It on an Acting Basis.

Ms. Lepera had long sought a full-time Associate Director for the Unit. (Lepera

---

1 The parties disagree about how often Ms. Lepera raised this issue, but there is no dispute that she began raising it in December 2013. (Dickinson Dep., 54:16-55:2)

Decl., ¶¶ 27-33; Exhibit 10, November 20, 2013 memo to Les Williams advocating full-time position) In January 2014, Mr. Williams authorized her to open a search for that position and to appoint someone to fill the position on an acting basis — known as a "substitute appointment" — until a full-scale search produced a suitable candidate. (Williams Decl., ¶ 13; Lepera Decl., ¶ 28) Ms. Lepera decided to appoint Mr. Kisel. (*Id.*, ¶¶ 28-29; Exhibit 11, proposal to appoint Mr. Kisel)

Ms. Lepera chose Mr. Kisel because he was available full-time, while plaintiff would have had to give up her private practice to take the acting position, and because Ms. Lepera continued to have reservations about plaintiff's performance, while being favorably impressed with the thorough and organized manner in which Mr. Kisel handled his cases. (Lepera Decl., ¶ 29) Mr. Kisel accepted the substitute appointment. (*Id.*; Exhibit 12, January 31, 2014 e-mail to Les Williams concerning appointment)

Ms. Lepera called a staff meeting for January 23, 2014 to announce the search and Mr. Kisel's appointment. (Lepera Decl., ¶ 36) Before that meeting, however, she met with plaintiff and, after telling her that she would be reappointed for the next semester, discussed her dissatisfaction with plaintiff's work. (*Id.*, ¶ 37) Plaintiff asked if she was being terminated, and Ms. Lepera replied that if plaintiff were being terminated, she would have told her that her employment would end that month. (*Id.*)

Ms. Lepera met later that day with Mr. Kisel and plaintiff and told them about the search for the permanent position, outlining the committee process, and telling them they were welcome to apply. (Lepera Decl., ¶¶ 37, 40) As the responsible hiring officer, it was Ms. Lepera's duty under CUNY's standard procedures to form an independent search committee. (*Id.*, ¶¶ 30-33; Williams Decl., ¶ 14) The committee would review and recommend candidates from whom Ms.

Lepera could select. (*Id.*) While she did not have to select any of the recommended candidates, she could not hire anyone else; another search would be required. (*Id.*)

Ms. Lepera named Frances Correa, an employee relations officer at CUNY's central office, as chair, and Oswald Fraser, at the time Executive Director of Human Resources at Queens College and Sangeeta Noel, Director of Faculty and Staff Relations at Queensborough Community College as the other members. (Lepera Decl., ¶¶ 30-31) Ms. Lepera had cordial professional relationships with them, but no social or close personal ties. (*Id;* Deposition of Frances Correa, 11:2-14; Declaration of Oswald Fraser, ¶ 3; Declaration of Sangeeta Noel, ¶ 3) She gave the committee a written job description explaining the nature of and requirements for the position, and Michael Collins, then University Director for Diversity and Compliance, explained the search process. (*Id.,* ¶¶ 31-33; Correa Dep., 13:18-14:6; Fraser Decl., ¶ 4; Noel Decl., ¶ 4) Ms. Lepera never communicated to anyone on the committee any views about candidates; indeed, she did not even have any views to communicate. (*Id.*; Correa Dep., 14:7-15:12, 28:10-17, 29:16-30:9, 32:3-6; Fraser Decl., ¶ 6; Noel Decl., ¶ 6)

### E. Plaintiff Becomes Concerned That She Might Not be Reappointed and Complains About Discrimination.

Shortly after the January 23, 2014 conversation with Ms. Lepera, plaintiff e-mailed Kam Wong, then Associate Director of Compliance, expressing fear for her future employment and her belief that Ms. Lepera favored Mr. Kisel over her, giving him the acting full-time appointment, because he was male, young and a "cute kid." (Dickinson Dep., 70:8-71:21; Exhibit 13, February 10, 2014 e-mail to Kam Wong) Ms. Wong interviewed plaintiff on February 13, 2014 and told plaintiff to file a formal complaint, which she eventually did. (Dickinson Dep., 71:22-72:2, 73:21-78:24; Exhibit 14, Kam Wong's interview notes; Exhibit 15, formal discrimination complaint) Mr. Collins took over the investigation after Ms. Wong left

CUNY. (Deposition of Michael Collins, 10:10-17) He re-interviewed plaintiff and interviewed Ms. Lepera and other members of the Unit's staff. (*Id.,* 17:11-19, 43:8-14)

Ms. Lepera admitted referring to Mr. Kisel, outside his presence, as a "cute kid" on one or two occasions. (Lepera Decl., ¶ 44) Ms. Lepera frequently calls people of various ages and sexes "kid," including other staff members of various ages and her own mother. (*Id.*; Malik Decl., ¶¶ 3-6) As for Mr. Kisel's being "cute," that referred to certain mannerisms and habits of Mr. Kisel's, including an addiction to bad puns. (*Id.*) She denied having made any reference to "new blood" in discussing the decision to appoint Mr. Kisel. (Lepera Decl., ¶ 45) Indeed, since the position was newly-created, there was no "old blood" to replace. (*Id.*) She explained to Mr. Collins why she had chosen Mr. Kisel over plaintiff, emphasizing his organized and thorough work habits. (Lepera Decl., ¶ 43)

Mr. Collins reported his conclusions in an April 8, 2014 memorandum to his supervisor, Gloriana Waters, Vice Chancellor for Human Resources Management. (Collins Dep., 42:11-43:3; Exhibit 16, Collins investigation report) He determined that the discrimination complaints could not be substantiated. (*Id.*) He so informed plaintiff and Ms. Lepera. (Collins Dep., 43:19-44:3; Dickinson Dep., 78:25-79:7; Lepera Decl., ¶ 46)

On April 14, 2014, plaintiff applied to the search committee for the full-time Associate Director position. (Dickinson Dep., 83:18-84:21; Exhibit 17, application) Ms. Lepera never knew plaintiff had applied for the position until the committee's records became available after Ms. Lepera had made her final decision. (Lepera Decl., ¶ 51)

### F. Ms. Lepera Decides Not to Renew Plaintiff's Appointment After the Spring 2014 Semester.

While the committee was evaluating candidates for the full-time position, Ms. Lepera had to decide whether to reappoint plaintiff for the following semester, and notify her of the decision

in April. (Lepera Decl., ¶¶ 47-50) As before, she met with Mr. Williams and they called Ms. Pearson. (*Id.*; Williams Decl., ¶ 14) Ms. Lepera reviewed her concerns with plaintiff's work and her judgment that plaintiff's performance had not significantly improved. (*Id.*; Exhibit 23, notes of discussion) She recommended that plaintiff not be reappointed, and the others concurred. (*Id.*)

Ms. Lepera and Mr. Williams met with plaintiff on April 21, 2014 to tell her that she would not be reappointed. (Lepera Dec., ¶¶ 48-50; Williams Decl., ¶¶ 17-19; Dickinson Dep., 88:10-13) Plaintiff accused them of not reappointing her because she had complained about discrimination and walked out. (*Id.*) Her last day of work was May 31, 2014. (Exhibit 24, April 22, 2014 non-reappointment letter)

**G. An Independent Search Committee Reviews Applicants for the Full-Time Position, and Ms. Lepera Ultimately Selects Mr. Kisel.**

Meanwhile, the committee reviewed applications and decided which persons to interview. (Deposition of Frances Correa, 22:11-24:9; Fraser Decl., ¶¶ 6-7; Noel Decl., ¶¶ 6-7) Plaintiff would normally have been an appropriate candidate to interview. (Correa Dep., 27:2-31-7) Ms. Correa, however, by virtue of her position in Human Resources, had learned in the ordinary course of business that plaintiff's appointment in the part-time position had not been renewed, though she knew nothing about the reason or plaintiff's job performance. (*Id.*) When she told this to the other members, they decided that it would make little sense to interview, and possibly forward, a candidate for the full-time job that the hiring officer had chosen, for reasons they did not know, not to reappoint for the part-time job. (*Id.,* 36:3-37:7) The committee also did not know that plaintiff had filed a discrimination complaint. (Fraser Decl., ¶ 12; Noel Decl., ¶ 12)

The committee scheduled candidates for interviews, eventually interviewing four.[2] (Correa Dep., 23:13-20, 31:8-16, 43:5-23; Exhibit 18, search committee candidate log) Mr. Kisel was among them. (*Id.*) After completing the interviews, the committee forwarded two names, Mr. Kisel and Joseph Martarella. (*Id.*) Ms. Lepera chose Mr. Kisel. (Lepera Decl., ¶ 51) But the committee was not quite done with its work. Ms. Correa submitted the search documentation to Mr. Collins, as is the normal practice, and he expressed concern that the committee had forwarded only two candidates rather than the more usual three, inquiring specifically about Ms. Dickinson. (Correa Dep., 34:22-35:23) Ms. Correa explained why Ms. Dickinson had not been selected and recalled the committee to come up with a third candidate. (*Id.*) The committee then forwarded Henry Gomez, who interviewed with Ms. Lepera and Mr. Williams but was not selected, largely because he had expressed a preference for administrative work to doing hearings and wanted a job with a more predictable workload than this position afforded. (Exhibit 19, August 11, 2014 e-mail referring Mr. Gomez; Exhibit 20, August 25, 2014 e-mail concerning Gomez interview) Ms. Lepera then re-selected Mr. Kisel, who remains in the position to Ms. Lepera's continuing satisfaction. (Lepera Decl., ¶ 52; Exhibit 21, August 28, 2014 e-mail concerning appointment of Mr. Kisel, Exhibit 22, Appointment letter; Exhibit 26, comparative disposition records of Ms. Lepera, Mr. Kisel, and plaintiff)

**H. Ms. Lepera Replaces Plaintiff with an Even Older Woman.**

Starting around June 2014, Ms. Lepera began looking for someone to replace plaintiff in the part-time position. (Lepera Decl., ¶ 53) She selected Carol Bombardi, an attorney who wanted to shift from full-time to part-time work. (*Id.*) Ms. Bombardi, who remains in the part-time position to this day, was born in 1958, making her several years older than plaintiff. (*Id.*;

[2] One candidate could not make the originally scheduled interview and ended up not rescheduling. (Correa Dep., 43:10-15) Another accepted a different job before the interview date. (Exhibit 18)

Exhibit 25, documents relating to appointment of Ms. Bombardi) Plaintiff, meanwhile, has found full-time work on a contract basis with the City of New York, making far more than she had made in her former, part-time position. (Dickinson Dep., 92:12-93:14)

## PROCEDURAL HISTORY

Plaintiff filed a charge of sex and age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on September 22, 2014. At plaintiff's request, the EEOC closed the case on October 29, 2015 and issued a right-to-sue letter. Plaintiff then filed an action alleging sex and age discrimination and retaliation under federal and state law in Supreme Court, New York County on January 26, 2016. (Docket No.1) Defendants removed the action to this Court on February 10, 2016. (*Id.*)

## ARGUMENT

A party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "Summary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied* 540 U.S. 811 (2003) (internal citations and quotation marks omitted), and a plaintiff "must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona College,* 521 F.3d 130, 137 (2d Cir. 2008). The ultimate test is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Discrimination and retaliation claims under federal and state law use the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). *See Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir. 2013); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (2004).

In a discrimination case, the employee bears the initial burden of setting forth evidence sufficient to support a *prima facie* case of discrimination by showing that: (1) she was a member of a protected class: (2) she was performing her duties satisfactorily; (3) she was subject to adverse employment action; and (4) she suffered the adverse action under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802; *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012). The burden then shifts to the defendant to produce evidence that the adverse action was taken for a legitimate, non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). Then "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253).

In a retaliation case, plaintiff similarly has the initial burden to establish a *prima facie* case by demonstrating: "(1) that [she] participated in a protected activity, (2) that [she] suffered an adverse employment action, and (3) that there was a causal connection between [her] engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citation omitted); *Forrest*, 3 N.Y.3d at 313. Plaintiff must ultimately show that retaliation was the "but-for" cause of the adverse action complained about. *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* — U.S. —, 133 S. Ct. 2517, 2528 (2013). If the plaintiff can establish a *prima facie* case of retaliation, the burden then similarly shifts to the defendant to produce legitimate, non-retaliatory reason for its actions. *Summa*, 708 F.3d at 125, after which the ultimate burden is on the plaintiff to establish that the

defendants' reasons are, in fact, pretexts for unlawful retaliation. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014).[3]

To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock,* 224 F.3d at 42 (internal quotation marks and citations omitted). In determining whether the articulated reason for the action is a pretext, courts "are decidedly not interested in the truth of the allegations against plaintiff. [They] are interested in what '*motivated* the employer,' . . . (emphasis added) (internal quotations omitted); the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). At all times, the plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her on the basis of a protected characteristic or retaliated against her based on protected activity. *Hicks,* 509 U.S. at 510-11.

As for hostile work environment claims, there must be evidence "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir.

---

[3] In both discrimination and retaliation cases, where, as here, defendants have articulated legitimate, non-retaliatory reasons for their actions, whether plaintiff has made out a *prima facie* case is academic, and the Court can proceed directly to the ultimate issue of whether, on the record as a whole, plaintiff can establish issues of fact that would, if resolved in his favor, carry his ultimate burden. *Ferraro v. Kellwood Co.,* 440 F.3d 96, 100 (2d Cir. 2006); *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant."); *Furfero v. St. John's Univ.*, 94 A.D.3d 695, 697 (2d Dep't 2012).

2012) (citation and internal quotation marks omitted); *Forrest,* 3 N.Y.3d at 310-12. A plaintiff must show that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation and internal quotation marks omitted).

Plaintiff lacks evidence sufficient to create a triable issue of fact on any of these claims.

## POINT I

## THE DECISION NOT TO REAPPOINT PLAINTIFF WAS NEITHER DISCRIMINATORY NOR RETALIATORY

It is not clear whether plaintiff now contends that the decision not to reappoint her was retaliatory, discriminatory, or both. At the time, she said she thought it was retaliatory, *see* Dickinson Dep., 88:10-13; Lepera Decl., ¶ 50; Williams Decl., ¶¶ 17-19, but defendant will address both possibilities.

### A. The Decision Not to Reappoint Plaintiff Was Not Based on Plaintiff's Age or Sex.

Ms. Lepera, then a woman of 55, hired plaintiff, then a woman of 49, and, less than a year later, decided not to renew her appointment. "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998); *Colon v. Trump International Hotel & Tower,* 10 Civ. 4794 (JGK), 2011 WL 6092299 at *8 (S.D.N.Y. Dec. 7, 2011). This "same actor" defense rests on the common-sense inference that a manager who knowingly hired someone in a protected class would not likely have had, or quickly developed,

an aversion to members of that class, *see Ramos v. Marriott Int'l*, 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001)[4], or "'hire[d] workers from a group one dislikes (thereby incurring the psychological costs of associating with them) only to fire them once they are on the job.'" *Dedyo v. Baker Engineering New York, Inc.*, 96 Civ. 7152 (LBS), 1998 WL 9376 at *7 (S.D.N.Y. Jan. 13, 1998) *quoting Proud v. Stone,* 945 F.2d 796, 797 (4th Cir. 1991).

This case is a textbook example of the "same actor" inference at its full strength. The employment relationship here was short, so, in the absence of other evidence, the only plausible inference is that Ms. Lepera's attitudes toward middle-aged women were the same when she decided not to renew plaintiff's appointment as they had been when she decided to hire her in the first place.

In addition, plaintiff and Ms. Lepera are members of the same protected classes, middle-aged and women, which makes it all the more implausible that Ms. Lepera decided not to renew plaintiff's appointment because of plaintiff's being a middle-aged woman. "[A]n allegation that a decision was motivated by discriminatory animus is weakened when a decisionmaker is a member of the same protected class as the plaintiff." *Inguanzo v. Housing & Services, Inc.,* 12 Civ. 8212 (ER), 2014 WL 4678254 at *19 (S.D.N.Y. Sept. 19, 2014), *aff'd*, 621 F. Appx. 91 (2d Cir. 2015); *Moore v. Kingsbrook Jewish Med. Ctr.,* 11 Civ. 3626 (MKB), 2013 WL 3968748 at *14 (E.D.N.Y. July 30. 2013) (collecting cases).

---

4 As the time between hiring and firing increases, the "same actor" inference becomes less compelling because "'[o]ver the years, an individual may develop an animus towards a class of people that did not exist when the hiring decision was made.'" *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 138 (2d Cir. 2000), *cert. denied*, 530 U.S. 1261 (2000), *quoting Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir. 1995). And in an age discrimination case, after long employment, the employee, whatever his or her age when hired, gets older. *See Emanuel v. Oliver, Wyman Co.,* 85 F. Supp.2d 321, 334 (S.D.N.Y. 2000). This case presents no such issues, however, because the inference remains strong when the time between hiring and firing is less than two years, as it is here. *See Jackson v. Post University, Inc.,* 836 F. Supp.2d 65, 89, n. 54 (D. Conn. 2011) (collecting cases).

Finally, plaintiff was replaced by Carol Bombardi, a woman even older than plaintiff. (Lepera Decl., ¶ 53; Exhibit 25) If Ms. Lepera were discriminating against plaintiff because of her sex or age, it would make little sense to deny reappointment to one middle-aged woman only to turn around and replace her with another, even older, middle-aged woman. *See Dellaporte v. CUNY,* 998 F. Supp.2d 214, 228 (S.D.N.Y. 2014); *Inguanzo, supra,* 2014 WL 4678254 at *19 (collecting cases).

These common-sense presumptions can, of course, be overcome by sufficient evidence, *see, e.g., Dedyo, supra,* 1998 WL 9376 at *8 (same actor inference rebutted when actor told plaintiff he was being fired because of his age), but the evidence here consists solely of plaintiff's opinions about her qualifications and work performance and a few equivocal stray remarks.

Plaintiff cannot make out a discrimination or retaliation case based upon her own disagreement with her supervisor's views, even if she is right and her supervisor is wrong. *Pearson v. Merrill Lynch*, 10 Civ. 5119 (RJS), 2012 WL 983546 at *6, 10 (S.D.N.Y. Mar. 22, 2012). As for the comments plaintiff relies on, "[v]erbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Silver v. N. Shore Univ. Hosp.,* 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007); *see also Galimore v. CUNY Bronx Comm. College,* 641 F. Supp. 2d 269, 283-84 (S.D.N.Y. 2009). "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 115 (2d Cir. 2007).

Plaintiff puts the timing of the remarks between November 2013 and January 2014, long before her termination. (Dickinson Dep., 52:14-20) As for their substance, the remarks about Mr. Kisel being a "cute kid" have no tendency to show discrimination. Ms. Lepera called everyone "kid," including her middle-aged office manager and her own mother. (Lepera Decl., ¶ 44; Malik Decl., ¶¶ 3-6) The references to Mr. Kisel's being "cute" referred to specific mannerisms that Ms. Lepera found amusing or endearing. (*Id.*)[5] Plaintiff herself is unwilling to attribute to them any deeper significance. (Dickinson Dep., 96:15-102:5) Neither the timing, content, or context of the comments plaintiff cites "supports an inference that Plaintiff's termination was motivated by discriminatory animus." *Galimore,* 641 F. Supp. 2d at 286.

If plaintiff now contends that her non-reappointment was based on her sex or age, not only did she not believe it at the time, but these three powerful and unrebutted contrary inferences require that summary judgment be granted on this claim.

**B. The Decision Not to Reappoint Plaintiff Was Not Retaliatory.**

Plaintiff has no non-speculative evidence to support her claim that her termination was caused by her protected activity except that it followed her discrimination complaint by a few months. Generally, no such inference is plausible where the time between the protected activity and the adverse action is more than two months, as it is here. *See, e.g.*, *Lopez v. City of New York*, No. 14-CV-3285 (NGG) (RLM), 2016 WL 3129184, at *9 (E.D.N.Y. June 6, 2016).

More fundamentally, however, although appropriately short temporal proximity may suffice to establish a *prima facie* case and survive a motion to dismiss, it is insufficient without more to raise a triable issue of pretext and survive summary judgment, and there is no more here.

---

5 The alleged "new blood" remark," if relevant at all, is relevant only to the decision to appoint Mr. Kisel rather than plaintiff to the acting full-time position, and will be discussed in Point II, *infra*.

*See El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010) (per curiam); *Rogers v. Bank of N.Y. Mellon,* 09 Civ. 8551 (HBP), 2016 WL 4362204 at *20 (S.D.N.Y. Aug. 15, 2016).

In addition, it is undisputed that plaintiff's continued employment was already on shaky ground before her protected activity, and "[employers'] proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001); *see also Swiss Reins. Am. Corp. v. Slattery,* 248 F.3d 87, 95 (2d Cir. 2001); *Dixon v. International Fed. of Accountants,* 09 Civ. 2839 (HB), 2010 WL 1424007 at *6 (S.D.N.Y. April 9, 2010), *aff'd*, 416 F. Appx. 107 (2d Cir. 2011).

On plaintiff's own account, Ms. Lepera had told her that she was unhappy with her work as early as December 2013, before she engaged in any protected activity. (Dickinson Dep., 47:19-22, 54:16-55:2; Exhibit 14; Lepera Decl., ¶¶ 19, 37-39) During the January 23, 2014 discussion, plaintiff even thought, wrongly, that Ms. Lepera had already decided not to reappoint her for the next semester, which prompted the protected activity in the first place. (*Id.*) It is also undisputed that Ms. Lepera had previously spoken to Mr. Williams and Ms. Pearson about her dissatisfaction with plaintiff's work and her hesitation to reappoint her for the Spring 2014 semester. (Lepera Decl., ¶¶ 35-36; Williams Decl., ¶¶ 9-12)

Because plaintiff has no evidence other than temporal proximity, and because of undisputed evidence that Ms. Lepera was already unhappy with plaintiff's work, had expressed that unhappiness to plaintiff and others, and had seriously considered not reappointing plaintiff for the Spring 2014 semester, before she engaged in protected activity, CUNY is entitled to summary judgment on the retaliatory non-reappointment claim.

**POINT II**

**PLAINTIFF CANNOT SHOW THAT MS. LEPERA'S REASONS FOR APPOINTING MR. KISEL TO THE ACTING POSITION WERE A PRETEXT FOR DISCRIMINATION**

By the time Ms. Lepera had to make a decision concerning who should hold the substitute full-time position, in January 2014, she had already begun to have doubts about plaintiff's work, which she had expressed not only to plaintiff herself, but to her supervisor and the Human Resources Director. (Lepera Decl., ¶¶ 9, 35-39; Williams Decl., ¶¶ 9-12) At the time, she was in genuine doubt whether to re-appoint plaintiff to her part-time position, which, again, she had discussed with her supervisor and the Human Resources Director. (*Id.*) None of this can be disputed. The only question is whether these doubts were, nevertheless, a pretext for discrimination. Here, again, plaintiff seems to rely on her own view of her qualifications and stray remarks.

As for plaintiff's allegedly superior qualifications, to support an inference of pretext, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001) (citation omitted). Plaintiff can make no such showing. Mr. Kisel had some experience with unemployment insurance hearings, had worked in related employment law fields, and was a lawyer. (Exhibit 5) Ms. Lepera put great weight, for a job that was partly administrative, on his organized and thorough work habits. (Lepera Decl., ¶¶ 26, 29) These are legitimate qualifications, which an employer has discretion to prefer over others. *Scaria v. Rubin,* 117 F.3d 652, 654-55 (2d Cir. 1997) (choice between experience or education up to employer and not evidence of pretext). Plaintiff had more experience than Mr. Kisel, but

that is all one can say in plaintiff's favor. Indeed, experience can be a disadvantage, leading by long repetition to deeply-entrenched bad habits, like the sloppy file management that had concerned Ms. Lepera. (*Id.*).

The only other evidence plaintiff has is her allegation, which Ms. Lepera denies, that in announcing her decision Ms. Lepera told plaintiff she wanted "new blood" in the position. (Dickinson Dep., 47:8-50:17; Lepera Decl., ¶ 45) The remark, if made, was made by a decision-maker and contemporaneous with the decision, but context and content do not support an inference of discrimination because it is, literally, senseless. "New blood" is a phrase used when someone younger is brought in to replace someone older; it presupposes the existence of "old blood" to replace. Here, however, there was no "old blood;" this was a newly-created position. It simply would not make sense to refer to a desire for "new blood" in that situation, and plaintiff herself struggled to explain why what she says Ms. Lepera said made sense. (*Id.*)

Taken as a whole, plaintiff's evidence of pretext — her opinion of her qualifications and an alleged comment that, in context, had no meaning — is insufficient to raise a triable issue of pretext.

## POINT III

## AN INDEPENDENT SEARCH COMMITTEE FREE OF DISCRIMINATORY OR RETALIATORY ANIMUS, NOT MS. LEPERA, DECIDED NOT TO RECOMMEND PLAINTIFF FOR THE FULL-TIME JOB ULTIMATELY GIVEN TO MR. KISEL

Defendant is entitled to summary judgment dismissing the claims based on plaintiff's failure to win the full-time position because Ms. Lepera had nothing to do with that failure. The independent search committee decided on its own, without any input from Ms. Lepera, not to include plaintiff among the candidates for Ms. Lepera's consideration. (Correa Dep., 14:7-15:12, 28:10-17, 29:16-30:9, 32:3-6; Fraser Decl., ¶ 6; Noel Decl., ¶ 6) Ms. Lepera did not know that

plaintiff had applied for the job until after the selection process had concluded. (Lepera Decl., ¶ 51)

Ms. Lepera expressed no thoughts on any specific candidates to the committee members, all of whom deny any communications with her about any candidates until after the committee made its referrals. (Correa Dep., 14:7-15:12, 28:10-17, 29:16-30:9, 32:3-6; Fraser Decl., ¶ 6; Noel Decl., ¶ 6; Lepera Decl., ¶¶ 32-33) The committee members were also unaware of plaintiff's discrimination complaint and plaintiff elicited no contrary testimony. (Fraser Decl., ¶ 12; Noel Decl., ¶ 12) Plaintiff may disbelieve this testimony, but in the absence of affirmative evidence to the contrary "the possibility that defendants' proffered evidence will be discredited at trial cannot, by itself, permit a plaintiff to avoid summary judgment." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 86 (2d Cir. 2005). There is no such evidence.

Nor can CUNY's general corporate knowledge of plaintiff's discrimination complaint overcome the committee's lack of knowledge. When the specific decision-makers lacked knowledge of the plaintiff's protected activity, there must be evidence that the specific decision-makers acted explicitly or implicitly upon the orders or encouragement of a superior who had such knowledge. *See Henry v. Wyeth Pharmaceuticals, Inc.,* 616 F.3d 134, 148 (2d Cir. 2010), *cert. denied*, 562 U.S. 1279 (2011). There is no such evidence.

Finally, the "cat's paw" exception, under which an employer can be held liable for discrimination or retaliation when an unbiased ultimate decision-maker "has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action," *Vasquez v. Express Ambulance Serv.*, 835 F.3d 267, 272 (2d Cir. 2016), does not apply here. Cat's paw liability requires a specific intent by the allegedly manipulating subordinate to cause the adverse action. *See Straub v. Proctor Hosp.,* 562 U.S. 411, 419 (2011);

*Kasiotakis v. Macy's Retail Holdings, Inc.*, 14 Civ. 462 (CM), 2015 WL 6125356 at *12 (S.D.N.Y. Oct. 16, 2015) (specific intent to cause adverse action required). Ms. Lepera did not know that plaintiff had applied for the position, did not present false information — or any information — to the committee, and did not decline to reappoint her for the specific purpose of derailing her application, as the cat's paw theory requires. *See, e.g. Britt v. Merrill Lynch & Co.*, 08 Civ. 5356 (GBD), 2011 WL 4000992 at *8 (S.D.N.Y. Aug. 26, 2011) (cat's paw liability rejected in absence of evidence that allegedly biased supervisor influenced the decision-maker).

## POINT IV

## PLAINTIFF HAS NOT SHOWN ANY SEVERE OR PERVASIVE CONDUCT SUFFICIENT TO SUPPORT A HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff's hostile work environment claim is nothing more than a complaint that Ms. Lepera thought more highly of Mr. Kisel than she did of plaintiff, which made plaintiff unhappy. Neither in her complaint nor in her deposition does plaintiff relate any conduct by Ms. Lepera either severe or pervasive enough to support a hostile work environment claim. In her complaint, plaintiff mentions only the specific adverse employment actions that are the basis of her other claims. (Docket No. 1, Complaint, *passim*) In her deposition, the only thing she adds is that, shortly after Mr. Kisel's arrival, Ms. Lepera stopped bringing in a catalog from which plaintiff could order jewelry sold by Ms. Lepera's sister-in-law. (Dickinson Dep., 53:10-54:18) That does not constitute a hostile working environment.

## CONCLUSION

For the reasons given, defendant's motion for summary judgment should be granted, together with such further relief as the Court deems just and proper.

Dated: New York, New York
May 8, 2017

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant*
By:
/s/***Clement J. Colucci***

_______________________________

CLEMENT J. COLUCCI
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-8634
Clement.Colucci@ag.ny.gov